1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
                  AT SEATTLE

9

10   PEGGY PEARSON, individually and          CASE NO. C14-0521JLR
     as a representative of her class,

11                                            ORDER GRANTING
                    Plaintiff,                DEFENDANTS' MOTION TO
12                                            STAY PROCEEDINGS

13        v.

14   WELLS FARGO, N.A., WELLS
     FARGO HOME MORTGAGE, INC.,

15               Defendants.

16                      **I.   INTRODUCTION**

17        Before the court is Defendants Wells Fargo Bank, N.A. and Wells Fargo Home

18   Mortgage's (collectively "Wells Fargo") motion to stay proceedings.  (Mot. (Dkt # 17).)

19   Relevant to the present action are class-settlement proceedings pending in the Southern

20   District of Florida.  *See Fladell v. Wells Fargo Bank N.A.*, No. 0:13-cv-60721 (S.D. Fla.

21   March 17, 2014).  Wells Fargo asks the court to stay proceedings until *Fladell*'s final

22   settlement approval hearing on September 18, 2014.  (Mot. at 2.)  The court has

1    considered the motion, the parties' submissions filed in support of and opposition thereto,

2    the balance of the record, and the applicable law.  Considering itself fully advised, the

3    court GRANTS Defendants' motion.

4                              **II.      BACKGROUND**

5    **A.      Factual Background**

6            This case concerns Wells Fargo's alleged force-placed flood insurance practices.

7    "A person who borrows money to finance the purchase of residential property may be

8    required by the lender to obtain acceptable flood insurance on the real property securing

9    the loan."  *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1029 (N.D. Cal.

10   2013).  In such cases, "[w]hen a borrower does not maintain the insurance . . . the lender

11   steps in to purchase the insurance for the borrower."  *Id.*  This is called force-placed

12   insurance or lender-placed insurance.  *Id.*

13          On May 6, 2005, Ms. Peggy Pearson refinanced a loan with Washington Mutual

14   Bank, F.A.  (Compl. (Dkt. # 1) ¶ 23.)  Ms. Pearson secured the loan with a mortgage on

15   her home located in La Conner, Washington.  (*Id.*)  Allegedly, Washington Mutual did

16   not require Ms. Pearson to carry flood insurance.  (*Id.* ¶ 24.)  Ms. Pearson's mortgage

17   was transferred to Wells Fargo in 2007.  (*Id.* ¶ 25.)  Ms. Pearson claims that despite the

18   fact that she was not required to carry flood insurance, Wells Fargo sent letters informing

19   her that it required borrowers to carry flood insurance and that Wells Fargo had secured a

20   flood insurance policy for her in the amount of $193,200.00.  (*Id.* ¶¶ 26-29.)  Allegedly,

21   the flood insurance "had a $1,739 annual premium, which Wells Fargo took from Ms.

22   Pearson's escrow account."  (*Id.* ¶ 29.)  Subsequently, Ms. Pearson bought a different

1  policy from Hartford Insurance Company which covered the full replacement cost of her

2  home.  (*Id.* ¶ 30.)  The annual premium on the Hartford policy was $1,158, roughly two-

3  thirds the amount of the Wells Fargo premium.  (*Id.*)  Ms. Pearson claims that she

4  notified Wells Fargo that she had taken out the Hartford policy.  (*Id.* ¶ 31.)  She claims

5  that Wells Fargo indicated that the Hartford policy was adequate and that Wells Fargo

6  had cancelled the policy it force-placed.  (*Id.*)  Wells Fargo, however, did not reimburse

7  her for the premiums she paid under the force-placed policy.  (*Id.*)

8  **B.    Procedural Background**

9          Ms. Pearson filed the present putative class action on behalf of herself and the

10 proposed class of:

11       [a]ll persons who have or had a loan or line of credit with Defendants
         secured by their residential property in Washington and were required by
12       Defendants to purchase or maintain flood insurance on their property within
         six (6) years prior to this action's filing date through the date of class
13       certification in this action.

14 (*Id.* ¶ 40.)  Ms. Pearson's claims stem from the general theory that not only was Wells

15 Fargo's requirement that she carry excessively expensive flood insurance "fraudulent"

16 and "deceptive," but that Wells Fargo acted as a broker for its affiliated flood-insurance

17 companies, unjustly receiving "kick-back" commissions for the flood insurance Wells

18 Fargo force-placed.  (*Id.* ¶¶ 27, 33-34.)  She asserts causes of action for breach of

19 contract, breach of the covenant of good faith and fair dealing, unjust enrichment, breach

20 of fiduciary duty, and violations of the Truth in Lending Act ("TILA"), 15 U.S.C.

21 §§ 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

22 §§ 2601 *et seq.*  (*See generally id.*)

On May 1, 2014, Wells Fargo filed a motion to stay proceedings in this case until after the final class action settlement approval hearing in a similar action, *Fladell v. Wells Fargo Bank, N.A.* (Mot. at 2.)  The *Fladell* hearing is scheduled for September 18, 2014. (*Id.*)  The *Fladell* action is similar to the present case.  Plaintiffs filed a class action in the Southern District of Florida against Wells Fargo and several other insurance defendants. (*See* Mot. Ex. C at 2-3.)  Like Ms. Pearson, the *Fladell* plaintiffs brought claims stemming from the general theory that Wells Fargo and its affiliated insurance companies forced homeowners to pay excessive premiums for force-placed flood insurance and that Wells Fargo unjustly profited from kick-backs.  (*Id.* at 3.)  The *Fladell* plaintiffs brought claims for, among others, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, violations of TILA, tortious interference with a business relationship, and breach of fiduciary duty.  (*See id.* at 32-43.)

Before *Fladell* could go to trial, however, Chief Judge Moreno preliminarily approved a class-wide settlement.  (*See* Mot. Ex. A.)  The proposed settlement class includes:

> All borrowers in the United States who within the Class Period . . . were charged by the Wells Fargo Defendants under a hazard, flood, flood gap or wind-only LPI Policy for residential property, and who, within the Class Period, either (i) paid to the Wells Fargo Defendants the Net Premium for that LPI Policy or (ii) did not pay to and still owe the Wells Fargo Defendants the Net Premium for that LPI Policy.

(*Id.* at 4.)  The class period for Washington homeowners included in the *Fladell* settlement begins on January 1, 2008.  (*Id.*)   According to the terms of the proposed settlement, class members have the opportunity to opt-out.  (*Id.* at 8-9.)  If settlement

1    class members do not exercise their right to opt-out before the settlement is finally

2    approved, they are bound by the terms of the settlement and must release all claims that

3    "relate, concern, arise from, or pertain in any way" to the "conduct, policies, or practices

4    concerning hazard LPI Policies placed by the Wells Fargo Defendants during the class

5    period." (*Id.* at 12.)  Further, class members who do not opt-out are preliminarily

6    enjoined from commencing or participating in any lawsuit, in any jurisdiction, relating to

7    the claims or causes of action in the *Fladell* case.  (*Id.* at 13.)  The notices to the *Fladell*

8    settlement class will be sent on June 20, 2014.  (Mot. at 3.)  The final settlement approval

9    hearing is on September 18, 2014.  (Mot. Ex. A. at 6.)

10                              **III.    ANALYSIS**

11   **A.    Standard on a Motion to Stay**

12           A district court has discretionary power to stay proceedings before it.  *Lockyer v.*

13   *Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  This power to stay is "incidental to

14   the power inherent in every court to control the disposition of the causes on its docket

15   with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N.*

16   *Am. Co.*, 299 U.S. 248, 254 (1936); *see also Gold v. Johns-Manville Sales Corp.*, 723

17   F.2d 1068, 1077 (3rd Cir. 1983) (holding that the power to stay proceedings comes from

18   the power of every court to manage the cases on its docket and to ensure a fair and

19   efficient adjudication of the matter at hand).  Economy of time and effort is best

20   accomplished by the "exercise of judgment, which must weigh competing interests and

21   maintain an even balance."  *Landis*, 299 U.S. at 254-55.

22

1    When considering a motion to stay, the court weighs a series of competing

2    interests:  (1) the possible damage that may result from the granting of the stay; (2) the

3    hardship or inequity which a party may suffer in being required to go forward; and (3) the

4    orderly course of justice measured in terms of the simplification or complication of

5    issues, proof, and questions of law that could be expected to result from a stay.  *CMAX,*

6    *Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55); *see*

7    *also Lockyer*, 398 F.3d at 1109.  As the Ninth Circuit has noted, "*Landis* cautions that 'if

8    there is even a fair possibility that the stay . . . will work damage to someone else,' the

9    party seeking the stay 'must make out a clear case of hardship or inequity.'"  *Lockyer*,

10    398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255).

11    **B.    The Factors the Court Considers**

12        **1.  Possible damage from the granting of the stay**

13        The first factor weighs in favor of granting the stay.  Ms. Pearson contends that the

14    granting of the stay would prejudice her and the putative class of Washington

15    homeowners.  (Resp. (Dkt. # 19) at 7.)  She argues that the stay would deprive her of the

16    ability to pursue the case for years as the *Fladell* settlement "winds its way through the

17    courts."  (*Id.*)  Further, she contends that the *Fladell* settlement contains unfair terms that

18    would strip her of the right to pursue class claims and to protect the "entire Washington

19    class."  (*Id.*)  Finally, Ms. Pearson cites *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797

20    (1985), for the proposition that the stay would violate her right to due process under the

21    Constitution by depriving her of the right to pursue her claims absent notice or a final

22    judgment in the *Fladell* action.  (*Id.* at 12-13.)

ORDER- 6

1    Ms. Pearson's arguments are to no avail.  The court sees no reason why the stay

2    would actually hinder Ms. Pearson ability to ultimately bring her suit here.  The stay

3    would only delay the action for approximately four months.  (*See* Mot. at 3.)  If the

4    *Fladell* settlement is finally approved, it represents a final judgment with preclusive

5    effect.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746-47 (9th. Cir. 2006).

6    After that time, Ms. Pearson may move to lift the stay and continue with her present suit.

7    Ms. Pearson's second argument concerns the fairness of the *Fladell* settlement.  It

8    has no bearing on the present motion.  Although it does not guarantee final approval, the

9    court notes that the *Fladell* settlement has already received preliminary approval from the

10   Southern District of Florida.  (*See* Mot. Ex. A.)  Indeed, if Ms. Pearson views the *Fladell*

11   settlement as unfair, she may simply challenge it in the Southern District of Florida or opt

12   out.

13   Finally, Ms. Pearson misconstrues *Phillips Petroleum*.  That case stands for the

14   proposition that a plaintiff may not be bound to a claim for money damages or similar

15   relief without first being given notice and an opportunity to participate in the litigation.

16   *Phillips Petroleum Co.*, 472 U.S. at 811-812.  *Phillips Petroleum*'s notice requirement,

17   however, is not relevant here.  Defendants' motion does not bind Ms. Pearson and the

18   putative class to the *Fladell* proceedings.  The motion merely seeks to stay proceedings

19   until the court can determine whether Ms. Pearson and the Washington class have

20   themselves chosen to be bound to the *Fladell* settlement by failing to opt out.

21   Accordingly, because Ms. Pearson's ability to pursue her claim will not be hindered by

22   the stay, the first factor weighs in favor of granting Defendants' motion.

### 2. The hardship or inequity a party may suffer in being required to go forward and the orderly course of justice

As the second and third factors weigh in favor of granting the stay for similar reasons, the court analyzes them together.  If the court does not grant the stay, Defendants could be forced to defend against plaintiffs who are barred from participating in the litigation by the *Fladell* settlement.  (*See* Mot. Ex. A at 8-9, 13.)  The proposed settlement class in *Fladell* is nationwide.  (*See id* at 4.)  It includes both Ms. Pearson and the entire Washington-homeowner class in this action.  (*See id.*)  If the court allows the present suit to continue without first determining the status of the *Fladell* settlement class, the uncertainty as to the ability of both Ms. Pearson and the putative class to participate in the litigation could cause considerable hardship to Defendants, complicate the litigation, and waste judicial resources.  If the court grants the stay, however, the *Fladell* settlement could simplify matters for this court by determining the landscape of plaintiffs who are permitted to bring or participate in suits against Wells Fargo. Accordingly, all three factors weigh in favor of granting Defendants' motion.

//

//

//

//

//

//

//

ORDER- 8

1

## IV.    CONCLUSION

2          For the foregoing reasons, the court GRANTS Defendants' motion to stay

3  proceedings (Dkt. # 17) until the *Fladell* final settlement approval hearing on September

4  18, 2014.  Within one week thereafter, the parties shall file a joint status report

5  concerning the state of the *Fladell* settlement and the parties' claims here.

6          Dated this 2nd day of June, 2014.

7

8

9          _____

10         JAMES L. ROBART
           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 9